UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:26-cv-60953-LEIBOWITZ

**NELSON MATOS ORTA**,

*Petitioner,*

*v.*

**FIELD OFFICE DIRECTOR,** *et al.,*

*Respondents.*

_____/

## ORDER

**THIS CAUSE** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus (the "Petition") [ECF No. 1], filed on April 4, 2026.  The Government responded to this Court's Order to Show Cause [ECF No. 6], and Petitioner replied [ECF No. 7].  The Court agrees with the Government that Petitioner's detention is lawful.  After careful review, the Petition [**ECF No. 1**] is DISMISSED.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is sixty-one years old and came to the United States from Cuba on December 21, 1990.  [ECF No. 1 ¶ 22].  That day he became a lawful permanent resident.  [*Id.* ¶ 24; *see* ECF No. 1-6].  Since then, Petitioner has resided in the United States continuously.  [ECF No. 1 ¶ 23].  While a continuous resident in this country, Petitioner has well-acclimated himself to American lifestyle; he operates a business, Lango Fish, Inc., has filed federal income taxes from 2001 to 2025, and currently owns two properties with family members.  [*Id.* ¶¶ 36–37, 40; *see* ECF Nos. 14, 15, 17].  Now, to the procedural logistics that bring us to the instant Petition:

On March 15, 2000, Petitioner was convicted of conspiracy to commit alien smuggling under 8 U.S.C. § 1324(a)(1)(A)(v)(I), and sentenced to sixteen months' imprisonment by the Honorable

Norman C. Roettger.  [ECF No. ¶ 25; ECF No. 1-8].  On July 10, 2000, Petitioner was ordered removed to Cuba.  [ECF No. 1 ¶ 26; ECF No. 1-9].  However, because Petitioner was neither a flight risk nor a danger to the community, Petitioner was released from U.S. Immigration and Customs Enforcement ("ICE") custody on an Order of Supervision on October 10, 2000.  [Declaration of Deportation Officer Authur McLaughlin ("McLaughlin Decl."), ECF No. 6-2 ¶ 13].[1]

More than twenty-five years later, on October 31, 2025, ICE apprehended Petitioner when he appeared at one of his routine check-ins and subsequently took him into custody.  [*Id.* ¶ 14; ECF No. 1 ¶ 34].  On that day, ICE interviewed Petitioner and informed him of the revocation of the Order of Supervision.  [McLaughlin Decl., ECF No. 6-2 ¶ 15].  ICE provided Petitioner an opportunity to ask questions regarding the revocation, but he stated that he did not have any.  [*Id.*].

On November 1, 2025, ICE issued Petitioner a Notice of Revocation of Release ("Revocation Notice"), which detailed the reasons for revocation pursuant to 8 C.F.R. §§ 241.4 and 241.13.  [*Id.* ¶ 16; ECF No. 6-4].  In the Revocation Notice, ICE informed Petitioner that he was being remanded into ICE custody and that the Order of Supervision was revoked "based on review of [Petitioner's] file and/or [his] personal interview on account of the changed circumstances in [his] case."  [ECF No. 6-4 at 1].  Further, the Revocation Notice explained that the decision was based on Petitioner's "recent criminal history" and his "failure to follow the conditions set forth in" his Order of Supervision.  [*Id.*].  Petitioner remains detained at Broward Transitional Center.  [ECF No. 1 ¶ 9].

On April 4, 2026, Petitioner sought a writ of habeas corpus.  [*See generally* ECF No. 1].  The Petition includes seven counts: (1) Violation of the Fifth Amendment of the U.S Constitution Substantive Due Process; (2) Violation of the Fifth Amendment of the U.S. Constitution Procedural

---

[1]    Four years later, Petitioner was convicted of another federal offense, 18 U.S.C. § 659, and was sentenced to twenty-seven months' imprisonment by the Honorable Patricia Seitz.  [ECF No. 1 ¶ 27; ECF No. 1-11]

Due Process; (3) Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A)(B); (4) Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A); (5) Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(C); (6) Ultra Vires Action; and (7) Violation of the *Accardi* Doctrine.  [*See* ECF No. 1 ¶¶ 67–126].  Petitioner seeks several forms of relief, including an order to enjoin his removal and requiring his immediate release.  [*Id.* at 24–25].

## II. LEGAL STANDARD

District courts have the authority to grant writs of habeas corpus.  *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted).  A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law.  *See* 28 U.S.C. § 2241(c)(3).  The Court's jurisdiction extends to challenges involving immigration-related detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

### A. Jurisdiction

As a threshold matter, the Government claims that this Court lacks jurisdiction to hear the Petition pursuant to the jurisdiction-stripping provision of 8 U.S.C. § 1252(g).  [ECF No. 6 at 3–5]. The Government is half-correct here.

Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  The Supreme Court has narrowly interpreted Section 1252(g). *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("In fact, what § 1252(g) says is much narrower.  The provision applies only to three discrete actions that the Attorney General may take:

her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders." (emphasis removed)).   Contrary to the Government's position, this section "does not cover the universe of deportation claims." *Camarena v. Dir., Immigr. & Customs Enf.*, 988 F.3d 1268, 1272 (11th Cir. 2021).   The Eleventh Circuit has recognized the Supreme Court's limited application of Section 1252(g) to "three specific actions" only.   *Id.* (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)). Indeed, the *Jennings* Court expressly cautioned against interpreting "arising from" to mean anything more than these three discrete actions.   583 U.S. at 294.

The Government is right that there is no jurisdiction over its decision to revoke the Order of Supervision.   *See Barrios v. Ripa*, No. 25-cv-22644, 2025 WL 2280485, at *4 (S.D. Fla. Aug. 8, 2025) (Gayles, J.) ("The decision to revoke Petitioner's OSUP, for the stated purpose of executing his removal order, clearly falls under the purview of § 1252(g)."). The same is true for Petitioner's request to enjoin his removal or his transfer outside the jurisdiction of this Court.   *See Lezama Garcia v. Miami Field Off. Dir.*, No. 25-cv-23169, 2026 WL 632351, at *3 (S.D. Fla. Mar. 6, 2026) (Altman, J.) (lacking jurisdiction over the petitioner's request to stay his removal or stay his transfer under Section 1252(g)).

But the core of Petitioner's case here is much more than this.   The crux of the Petition "challenges the manner in which the government revoked [Petitioner's] release," allegedly done in a way without due process and in violation of agency regulations.   [*See* ECF No. 7 at 9].   Jurisdiction certainly lies when reviewing whether agency regulations and procedures were properly followed.   *See Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014) (per curiam). This Court is not alone on this question.   *See, e.g., Fuentes v. Ripa*, No. 26-cv-134, 2026 WL 717982, at *2 (M.D. Fla. Mar. 16, 2026) ("The crux of Fuentes's claims is that ICE failed to comply with its regulations and due process when it revoked his OSUP. . . . Thus, the Court finds that [Section] 1252(g) does not bar Fuentes's claims."); *Barrios*, 2025 WL 2280485, at *5 (similar); *Lezama Garcia*, 2026 WL 632351, at *4 (similar).

Accordingly, Section 1252(g) does not bar review of Petitioner's claims vis-à-vis the Government's adherence to its own regulations and internal procedures.

**B.  The Claims**

Beginning with the constitutional claims (Counts I and II), Petitioner moves for habeas relief and argues that his detention is unlawful, citing *Zadvydas* from the Supreme Court.  [ECF No. 1 ¶ 44–45, 50].  But Petitioner challenges a post-removal detention order, which calls for a specific period of detention before seeking relief under established principles of this Circuit.  For the reasons stated, this request is premature.

Section 1231(a) of the Immigration and Nationality Act ("INA") applies to aliens who are subject to a final order of removal.  *See* 8 U.S.C. § 1231(a).  When an alien is ordered removed, "the Attorney General shall remove the alien from the United States within a period of 90 days[,]" which is known as the "removal period."  *Id.*  Once the order of removal is finalized, the Government should do its best to execute removal during the ninety-day period.  *See Zadvydas*, 533 U.S. at 699–701.  But sometimes the Government does not timely remove the petitioner, so the indefinite detention of an alien "raises serious constitutional concerns."  *Sosa v. Warden, Baker Corr. Inst.*, No. 26-cv-51, 2026 WL 592434, at *2 (M.D. Fla. Mar. 3, 2026).  "The Supreme Court in *Zadvydas* held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation."  *Id.*

To obtain relief from a post-removal order of detention under the *Zadvydas* framework, a petitioner must: "(1) show that he's been detained for more than six months; and (2) establish that there's no significant likelihood of removal in the foreseeable future."  *Flores-Reyes v. Assistant Field Off. Dir.*, No. 26-cv-20226, 2026 WL 406708, at *2 (S.D. Fla. Feb. 13, 2026) (Altman, J.) (citing *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[T]o state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a

good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.")).

Here, Petitioner was ordered removed in July 2000, so this challenge is governed by *Zadvydas*. [*See* ECF No. 1-9; *see also* McLaughlin Decl., ECF No. 6-2 ¶ 12]. However, Petitioner was detained beginning on October 31, 2025 [McLaughlin Decl., ECF No. 6-2 ¶ 14], and the instant Petition was filed on April 4, 2026. [*See* ECF No. 1]. The six-month period isn't up yet. Undeterred, Petitioner argues that his 90 and 180-day removal period under 8 U.S.C. § 1231(a), lapsed years ago on October 8, 2000, and January 6, 2001, respectively. [*See* ECF No. 7 at 19]. But that occurred two decades ago prior to Petitioner's release on an Order of Supervision for more than twenty-five years before his instant detention. The clock started running upon his subsequent apprehension on October 31, 2025, not when he was initially detained in 2000. Petitioner essentially attempts an aggregation argument here under *Zadvydas*, but the undersigned—consistent with many judges in this Circuit—rejects that proffer. *See Barrios*, 2025 WL 2280485, at *8 ("However, if the Court counted detentions in the aggregate, any subsequent period of detention, even one day, would raise constitutional concerns. And adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals."); *Mora v. U.S. Immigr. & Customs Enf.*, No. 26-cv-671, 2026 WL 962230, at *2 (M.D. Fla. Apr. 9, 2026) ("This Court believes that aggregating the past period of detention is not appropriate here."); *Meskini v. Att'y Gen. of U.S.*, No. 14-CV-42, 2018 WL 1321576, at *3 (M.D. Ga. Mar. 14, 2018) ("This Court does not read *Zadvydas* to be a permanent 'Get Out of Jail Free Card' that may be redeemed at any time just because an alien was detained too long in the past.").

As such, Petitioner's detention falls short of the time required to receive the benefit of the *Zadvydas* presumption of unreasonableness. Therefore, Petitioner's request is premature. *See Flores-*

*Reyes*, 2026 WL 406708, at *2 (dismissing habeas petition as premature because the post-removal order detention did not exceed six months).

Although Petitioner's due process claims are not ripe, Petitioner does not rely on the Constitution alone for relief.  The Court now turns to the remaining Administrative Procedure Act ("APA") and *Accardi* doctrine claims that the Court has jurisdiction to consider.[2]

The Government can revoke an Order of Supervision for several reasons, including when an alien violates his "conditions of release."  8 C.F.R. § 241.4(l)(1).  Upon revocation under this provision, the alien is entitled to notice "of the reasons for revocation" and an informal interview where the alien may "respond to the reasons for revocation."  *Id.* § 241.4(l)(1).  An Order of Supervision may also be revoked when, "in the exercise of discretion" of the Executive Associate Commissioner or the district director, "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien[.]"  *Id.* § 241.4(l)(2)(iii).  A district director may execute the revocation when it "is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner."  *Id.*  "Section 241.4(l)(2) does not mention affording the alien notice or an informal interview."  *Barrios*, 2025 WL 2280485, at *3.

Section 241.13 is similar when it comes to revoking an Order of Supervision.  Under this regulation, an alien's release may be revoked if he or she violates his or her conditions of release.  *See* § 241.13(i)(1).  The Order of Supervision may also be revoked when "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  *Id.* § 241.13(i)(2).  An alien is entitled to notice of the

---

[2]      For instance, part of Count IV seeks to challenge "Respondents' decision to revoke Petitioner's order of supervision" because it allegedly "ran counter to the evidence before the agency . . . ."  [ECF No. 1 ¶ 105].  As stated above, the Court lacks jurisdiction under Section 1252(g) to review this portion of the claim.

reasons of revocation "after his or her return to Service custody" to afford the alien "an informal interview . . . to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3).

For starters, the parties represent to the Court that Section 241.4(l)(2) is the governing authority for revocation. [*See* ECF No. 6 at 5–6; ECF No. 7 at 17]. However, the Revocation Notice cited both Section 241.4 and Section 241.13.[3] [*See* ECF No. 6-4 at 1]. Therefore, both regulations are relevant for purposes of this Petition.

Regarding Count III, Petitioner argues that Respondents violated the INA when it issued the Revocation Notice that revoked Petitioner's Order of Suspension because it was not "revoked by the ICE Executive Associate Director." [ECF No. 1 ¶ 93]. "The Executive Commissioner or district director must authorize the revocation of an OSUP pursuant to § 241.4(l)(2)." *Barrios*, 2025 WL 2280485, at *7 (citing § 241.4(l)(2)). "The district director includes the Field Office Director or 'other official . . . who is delegated the function or authority.'" *Id.* (citing 8 C.F.R. § 1.2). A review of the Revocation Notice, however, shows that it was signed by the Assistant Field Officer Director, albeit in redacted form. [*See* ECF No. 6-4 at 1]. That is sufficient here. *Barrios*, 2025 WL 2280485, at *7 ("The Court is unaware of any authority that requires Respondents to publicly document every time an official delegates authority to another official.").

Petitioner forgets that the Revocation Notice encompassed both 8 C.F.R. § 241.4 and § 241.13 as applicable revocation authority. [*See* ECF No. 6-4 at 1]. This is significant because "Section 241.13 contains no rigid signature requirement limiting revocation authority to field office directors or other specific high-ranking officials." *Fernandez del Pino v. Warden of Alligator Alcatraz*, No. 26-cv-377, 2026

---

[3] Although the Government relied on Section 241.4 as the governing authority in its response, a sloppy citation will not automatically "unlock [Petitioner's] cell door." *Tran v. Warden, Fla. Soft Side S. Det. Ctr.*, No. 25-cv-1224, 2026 WL 672969, at *9 (M.D. Fla. Mar. 10, 2026); *see also id.* (rejecting Petitioner's argument resting on "a game of regulatory gotcha" where the notice of revocation cited a different regulation than the one cited in the Government's brief).

WL 820476, at *3 (M.D. Fla. Mar. 25, 2026).  And despite Petitioner's contention, [*see* ECF No. 1 ¶ 94], "the relevant regulation does not mandate that the revoking official explicitly state in the Notice of Revocation of Release that the revocation was in the public interest . . . ." *Barrios*, 2025 WL 2280485, at *7.  Regardless, Petitioner cannot credibly argue that the lack of an explicit public interest finding somehow voids the Revocation Notice and therefore entitles him to immediate release from immigration custody.

Next, inherent in Counts III, IV, VII, Petitioner puts forth two related arguments: (1) that Respondents completely failed to give Petitioner "notice of the reasons for revocation and opportunity to be heard" prior to his Order of Supervision revocation; and (2) that Respondents failed to give Petitioner "advanced notice" prior to revocation.  [ECF No. 1 ¶¶ 99, 108, 125].

The Court is surprised by this "lack of notice" allegation, given the clarity of the Revocation Notice.  [*See* ECF No. 6-4 at 1 ("This decision has been made based on a review of your file and/or your personal interview on account of the changed circumstances in your case. Due to your recent criminal history and your failure to follow the conditions set forth in your order, a further review of your case is now necessary.")].  While this "may not have been the extensive memorandum [Petitioner] would have preferred, . . . it was more than enough to put him on notice of the Government's basic rationale for bringing him back into custody. Nothing more was needed to satisfy § 241.13(i)."[4] *Fernandez del Pino*, 2026 WL 820476, at *4.  Not only that, but the Government submitted a sworn affidavit that Petitioner was provided with an interview consistent with the regulations.  [*See* McLaughlin Decl., ECF No. 6-2 ¶ 15 ("ICE ERO conducted an informal interview with Petitioner, during which Petitioner was informed that his Order of Supervision had been revoked to effectuate

---

[4]    This Revocation Notice is not merely an anemic one that "tracks the regulatory language and fails to describe any changed circumstances," as other courts have recognized when granting habeas relief in these particular cases.  *See, e.g.*, *Fuentes*, 2026 WL 717982, at *3 (citing *Roble v. Bondi*, 803 F. Supp. 3d 766, 772 (D. Minn. 2025)).

his removal from the United States.  Petitioner was provided an opportunity to ask questions regarding the revocation of his Order of Supervision, but he stated that he did not have any questions at that time.")].  Petitioner received exactly what he was entitled to; moreover, Petitioner chose not to ask any questions at the time during his interview.  [*See* McLaughlin Dec., ECF No. 6-2 ¶ 15].  This is not a case where the Government completely ignored its duties under the law.  *See Fuentes*, 2026 WL 717982, at *3 (granting habeas relief in part because the Government "provided no evidence to show that [the petitioner] was provided with an informal interview so that he could respond to the reasons for the revocation—they simply contend he was not entitled to one").

The Court also rejects Petitioner's argument brought under *United States ex rel. Accardi v. Saughnessy*, 347 U.S. 260 (1954).  "[A]n agency must abide by its own regulations." *Fernandez del Pino*, 2026 WL 820476, at *4 (quoting *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979)). "Agency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court."  *Id.* (alteration adopted) (quoting *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984)).  "And it 'goes without saying that ICE, like all government agencies, must follow its own regulations.'"  *Id.* (quoting *Roble*, 803 F. Supp. at 774).

As discussed above, the Government complied with its own regulations by giving Petitioner notice and an interview.  What Petitioner tries to persuade this Court of under *Accardi* is that he was not provided with "advance notice."  [ECF No. 1 ¶ 125].  It is true that in this case, Petitioner was detained and given his informal interview on October 31, 2025, a day *before* being issued the Revocation Notice.  [McLaughlin Decl., ECF No. 6-2 ¶¶ 14–16].  But Petitioner does not squarely raise this; he simply alleges that he was entitled to "advance notice," [ECF No. 1 ¶ 125], and makes a passing reference on reply that his detention on October 31, 2025, was "unnoticed" [ECF No. 7 at 14]. (Petitioner also never states how much notice would be sufficient for the Government to comply with its own regulations.)  Conclusory and undeveloped argument without authority cannot be sufficient

10

for Petitioner to meet his exacting burden to warrant habeas relief.  *See Coloma v. Holder*, 445 F.3d 1282, 1284 (11th Cir. 2006) (per curiam) ("A petitioner has the burden of establishing his right to federal habeas relief." (internal quotation marks omitted) (quoting *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001))); *see also Escandon v. Fla. Soft Side S. Det. Ctr.*, No. 26-cv-646, 2026 WL 860576, at *2 (M.D. Fla. Mar. 30, 2026) ("Without that essential connection, those passing references cannot justify habeas relief.").

But to entertain this argument for a moment, this Court is not persuaded that Section 241.13 or Section 241.4 mandates the advance notice Petitioner cries for here.  *See generally* 8 C.F.R. §§ 241.13, 241.4.  To Petitioner's credit, there is a colorable argument that the notice, or "notification," must *precede* the interview under Section 241.  The words of these regulations imply that much.  *See* § 241.4(l)(1) ("The alien will be afforded an initial informal interview promptly after his or her return to Service custody *to afford the alien an opportunity to respond to the reasons for revocation stated in the notification*." (emphasis added)); *id.* § 241.13(i)(3) ("The Service will conduct an initial informal interview promptly after his or her return to Service custody *to afford the alien an opportunity to respond to the reasons for revocation stated in the notification*." (emphasis added)).  Other courts on precisely this issue, however, do not read these regulations as requiring such demanding pre-detention process.  *See, e.g.*, *Fernandez del Pino*, 2026 WL 820476, at *4 ("If he means ICE was required to provide process *before* putting him in handcuffs, he is misreading the text.  Section 241.13(i) does not mandate a pre-deprivation process." (emphasis in original)).  Petitioner provides no authority to convince this Court otherwise.

Petitioner's final possible avenue for habeas relief comprising Counts V and VI is a perfunctory allegation of "ultra vires action."  [ECF No. 1 ¶¶ 119–22].  Here, he alleges that "no statute, constitutional provision, or other source of law" authorizes his detention.  [*Id.* ¶ 121].  These counts are moot as the Court rejects both Petitioner's constitutional and statutory arguments under

the APA.  The Court cannot say at this stage that Petitioner's detention is unlawful and contrary to law such that these regulations are ultra vires.

## IV.  CONCLUSION

Accordingly, upon due consideration, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  The Petition [**ECF No. 1**] is **DISMISSED**.

2.  The *Clerk* is **DIRECTED** to **CLOSE** this case.  All deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in the Southern District of Florida on April 14, 2026.

_____
DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:      counsel of record

12